# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
MAR 0 2 2018
CLERK, U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY           DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
silver iPhone 6; Model: A1549 )
IMEI: 355783072544309 )
Currently in possession of: United States Border Patrol, Imperial )
Beach Station;1802 Saturn Blvd, Imperial Beach, CA 92154

Case No. ~~18MJ0578-AGS~~ CMZ

**18MJ0990**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Charles Zepeda, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/2/18

*Judge's signature*

City and state: San Diego, California     Hon. Mitchell D. Dembin, Magistrate Judge
*Printed name and title*

CPT

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Charles Zepeda, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## A. INTRODUCTION

1. I make this affidavit in support of an application for a search warrant of silver iPhone 6, Model: A1549, IMEI: 355783072544309 (hereinafter "**Target Telephone**") as described in Attachment A (incorporated herein by reference), which was seized from Jeffrey Edward KEY following his arrest on February 6, 2018 for Transportation of Illegal Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), in the Southern District of California (Case No. 18MJ0578-AGS). The **Target Telephone** is currently in the possession of the United States Border Patrol, Imperial Beach Station, located at 1802 Saturn Blvd, Imperial Beach, California 92154.

2. I seek authority to search the **Target Telephone** for evidence, fruits, and instrumentalities of Alien Smuggling (8 U.S.C. § 1324), from January 6, 2018 up to and including February 6, 2018, as more fully described in Attachment B (incorporated herein by reference).

3. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a Search Warrant, it does not set forth every fact that I have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximations unless otherwise noted.

## B. TRAINING AND EXPERIENCE

4. I am a United States Border Patrol Agent (BPA) within the Department of Homeland Security (DHS), Customs and Border Protection (CBP). I have been so employed as a BPA since October 2006. I am presently assigned to the Imperial Beach Station Intelligence Team (IMB SIT). I am a graduate of the United States Border Patrol Academy at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico. I have

received basic training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States.

5. I currently conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien smuggling-related investigations, many of which involved the arrest of persons for alien smuggling offenses. In those cases, I have conducted interviews of the arrested persons and their associates. Through these interviews, I have gained a working knowledge and insight into the activities and operations of alien smugglers.

6. Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a BPA, and consultations with law enforcement officers experienced in alien smuggling investigations, I know that persons engaged in alien smuggling activities tend to use cellular telephones for communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data, for the following:

*Affidavit in Support of Search Warrant* 2

a.  tending to indicate efforts to smuggle aliens from Mexico to the United States;

b.  tending to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens;

c.  tending to indicate efforts to transport within the United States aliens smuggled from Mexico to the United States;

d.  tending to monitor the progress of the illegal aliens while they are in transit within the United States;

e.  tending to coordinate the time the smuggled aliens will arrive at predetermined locations;

f.  tending to identify co-conspirators, criminal associates, or others involved in smuggling aliens from Mexico to the United States, and transporting aliens within the United States;

g.  tending to notify or warn co-conspirators, criminal associates, or others of law enforcement activity, including the presence and location of Border Patrol vehicles and the operational status of Border Patrol checkpoints;

h.  tending to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event;

i.  tending to identify other facilities, storage devices, or services - such as email addresses, IP addresses, phone numbers - that may contain electronic evidence tending to indicate efforts to smuggle aliens from Mexico to the United States, and transport the aliens within the United States;

j.  tending to identify travel to or presence at locations used as stash houses, load houses, or delivery points for aliens smuggled into the United States;

k.  tending to identify the user of, or persons with control over or access to, the subject phone; or

l.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## C. FACTS SUPPORTING PROBABLE CAUSE

9. On February 6, 2018, BPA Michael Wholton was assigned to the Remote Video Surveillance and Sensoring (RVSS) center. RVSS is a network of surveillance cameras along the United States/Mexico International Border used to monitor the border area and detect illegal entries and criminal activity in the Imperial Beach Station area of operations

10. At approximately 9:23 a.m., a seismic sensor activated near the area known to Border Patrol Agents as "Old Hollister Bridge". This area is located approximately one-mile north of the international border fence and is well known by Imperial Beach Station Border Patrol Agents as a location frequently used by alien smugglers to pick up illegal aliens and further their entry into the United States.

11. After the sensor activation, BPA Wholton scanned the Old Hollister Bridge area using the RVSS infrared camera and observed an individual, later identified as Marcial COLOHUA-Colohua (COLOHUA), standing on a dirt trail approximately twenty yards west of the south end of the bridge. COLOHUA appeared to be attempting to hide in brush near the side of the road. BPA Wholton reported his observations via Border Patrol service radio to agents nearby. Agents acknowledged the observations and responded to the location.

12. BPA Wholton maintained surveillance on COLOHUA, and saw a vehicle approach the area and stop on the south side of the bridge. The vehicle was subsequently identified as a Mazda 3 sedan bearing California license plate number 7ZFT980 (hereinafter "vehicle"). BPA Wholton witnessed COLOHUA run out from the brush and get into the vehicle. The vehicle made a U-turn and headed northbound on Hollister Street at a high rate of speed. The vehicle drove around a slower vehicle and continued north on Hollister Street, past Atherton Avenue, where BPA Wholton lost visual contact.

13. Supervisory Border Patrol Agent (SBPA) Denis Rogers observed the vehicle travel north on Hollister Street and turn eastbound onto Tocayo Avenue. SBPA Rogers activated his marked agency vehicle's emergency lights to stop the vehicle. The vehicle

*Affidavit in Support of Search Warrant*         4

failed to stop at a red light at the intersection of Oro Vista Road and Tocayo Avenue. As the vehicle was passing the intersection it collided with a Toyota Prius.

14. SBPA Rogers stopped to render aid and investigate the scene. Homeland Security Investigations (HSI) Special Agent James R. DeFilippo and SBPA Leslie Pino arrived at the scene and approached the driver of the vehicle, later identified as KEY. SBPA Pino ordered KEY to exit the vehicle and placed him under arrest for alien smuggling.

15. U.S. Customs Border Protection Officer (CBPO) Ramon Navarro and SBPA Rogers approached the passenger side of the vehicle. They detained the passenger, subsequently identified as Makenzie Ann SHEERER. SBPA Rogers arrested SHEERER for alien smuggling.

16. COLOHUA was found seated in the backseat of the vehicle. COLOHUA admitted to SBPA Rogers he crossed illegally into the United States. COLOHUA was taken into custody for being an illegal alien present in the United States without proper documentation.

17. San Diego Fire Department and medical services arrived on scene to treat all parties involved. SHEERER and COLOHUA were taken to Scripps Chula Vista Hospital for non-life-threatening injuries and were released after a couple hours. The civilian operating the Toyota Prius was taken to UCSD Hospital for non-life threatening injuries.

18. At the Imperial Beach Station, Border Patrol Intelligence Agent (BPA-I) Charles Zepeda and BPA Jose Martinez advised KEY of his *Miranda* rights, obtained a waiver, and video-recorded his statement. KEY said he received a call the day before on the **Target Telephone** from an unidentified individual offering to pay him $500-700 to transport an undocumented alien.

19. KEY explained that he arrived to the location where he was to pick up the alien approximately one hour late. On his way, he received calls on the **Target Telephone** from the unidentified individual yelling at him in English, "Where are you at!?" and "They are waiting for you!" KEY and SHEERER went to the gas station near Hollister Street as directed by the caller.

20. Upon arriving, COLOHUA entered the vehicle. The unidentified individual speaking on the **Target Telephone** told KEY to "bust a bitch now and get out of there!" KEY drove as directed by the unidentified individual. KEY heard sirens and saw that a United States Border Patrol vehicle was approaching. He immediately panicked and sped off until he crashed into the Toyota Prius.

21. Based upon my experience and investigation in this case, I believe that KEY was involved in an ongoing conspiracy to smuggle and transport an illegal alien. Based on my experience investigating alien smugglers, I also believe that KEY used the **Target Telephone** to coordinate with co-conspirators and/or associates regarding the smuggling and transporting of illegal aliens.

### D. METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such

acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

25. I, or any other duly authorized federal agent, will personally serve the warrant requested above, and will be assisted by other duly authorized federal investigators.

## E. CONCLUSION

26. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that evidence, fruits, and instrumentalities of alien smuggling, in violation of 8 U.S.C. § 1324 (as more fully described in Attachment B) will be found on the **Target Telephone** (as more fully described in Attachment A).

I swear the foregoing is true and correct to the best of my knowledge and belief.

CHARLES ZEPEDA
Border Patrol Agent- Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS ⎵ DAY OF MARCH 2018.

HON. MITCH D. DEMBIN
United States Magistrate Judge

*Affidavit in Support of Search Warrant* 7